UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:16CV-00121-DW

**MARGO L. BRYANT**                                                                                       **PLAINTIFF**

**VS.**

**CAROLYN W. COLVIN, Acting**
**Commissioner of Social Security**                                                              **DEFENDANT**

## MEMORANDUM OPINION AND ORDER

### BACKGROUND

The Commissioner of Social Security denied Margo L. Bryant's application for supplemental security income benefits. Bryant seeks judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g). Both Bryant (DN 13) and the Commissioner (DN 18) have filed a Fact and Law Summary. Pursuant to 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73, the parties have consented to the undersigned United States Magistrate Judge conducting all further proceedings in this case, including issuance of a memorandum opinion and entry of judgment, with direct review by the Sixth Circuit Court of Appeals in the event an appeal is filed. (DN 12).

### FINDINGS OF FACT

Margo Bryant is almost 35-years-old (Tr. 38), lives with her mother (Tr. 53), and has obtained her GED. (Tr. 25). She was most recently employed as a Frontline cashier and cook at White Castle but stopped working in April of 2014 because she didn't think she was good enough

for the job. (Tr. 43). Prior to working at White Castle, Bryant worked as a cashier at Smashburger (Tr. 44), as a server at McLarty and Associates (Tr. 44), as a hair-braider (Tr. 46), as a merchandise stocker at Wal-Mart (Tr. 47), and as a cashier at Save-a-lot (Tr. 49). Bryant cites paranoia as the main reason she cannot work anymore. (Tr. 50).

Bryant applied for supplemental security income benefits ("SSI") under Title XVI, claiming that she became disabled on June 17, 2014, (Tr. 164) as a result of a herniated disc in her spine, a learning disability, post-traumatic stress disorder, and bronchitis. (Tr. 186). Her applications were denied initially and again on reconsideration. (Tr. 101, 106). Administrative Law Judge Dwight D. Wilkerson ("ALJ") conducted a hearing in Louisville, Kentucky, on July 10, 2015. (Tr. 38). Byrant attended the hearing with her attorney Alvin D. Wax. (Id.). Sharon Lane, an impartial vocational expert also testified at the hearing. (Tr. 37). The ALJ issued an unfavorable decision on September 24, 2015. (Tr. 29).

The ALJ applied the traditional five-step sequential analysis promulgated by the Commissioner, 20 C.F.R § 404.1520; Kyle v. Comm'r of Soc. Sec., 609 F.3d 847, 855 (6th Cir. 2010), and found as follows. First, Bryant has not engaged in substantial gainful activity since her application date. (Tr. 17). Second, Bryant has the severe impairments of: "degenerative disc disease of the lumbar spine; kyphosis; obesity; depression; anxiety disorder; [and] learning disorder (20 CFR 416.920(c))." (Id.). Third, none of Bryant's impairments or combination of impairments meets or medically equals the severity of a listed impairment from 20 C.F.R. Pt. 404, Subpt. P, App'x 1 (Tr. 21). Fourth, Bryant has the residual functional capacity ("RFC") to perform light work with the following limitations:

> [N]o climbing of ladders, ropes, or scaffolds; [and] no more than occasional climbing of ramps and stairs, stooping, kneeling, crouching, and crawling. The claimant is able to understand and complete simple, routine, 1-3 step tasks that require minimal reading, in a task-oriented setting with infrequent change and no more than occasional interaction with co-workers and supervisors and no work with the general public.

(Tr. 23). Additionally, Bryant is unable to perform any of her past relevant work. (Tr. 28). Fifth and finally, considering Bryant's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that she can perform. (Tr. 28).

Bryant appealed the ALJ's decision. (Tr. 10). The Appeals Council declined review. (Tr. 1). At that point, the denial became the final decision of the Commissioner, and Bryant appealed to this Court. (DN 1).

## CONCLUSIONS OF LAW

### A. Standard of Review

When reviewing the Administrative Law Judge's decision to deny disability benefits, the Court may "not try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." Cutlip v. Sec'y of Health & Human Servs., 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted). Instead, the Court's review of the Administrative Law Judge's decision is limited to an inquiry as to whether the Administrative Law Judge's findings were supported by substantial evidence, 42 U.S.C. § 405(g); Foster v. Halter, 279 F.3d 348, 353 (6th Cir. 2001) (citations omitted), and whether the Administrative Law Judge employed the proper legal standards in reaching her conclusion. See Landsaw v. Sec'y of Health & Human Servs., 803 F.2d 211, 213 (6th Cir. 1986). Substantial evidence exists "when a reasonable mind could accept the

3

evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way." Cotton v. Sullivan, 2 F.3d 692, 695 (6th Cir. 1993).

B. Finding No. 3

Bryant first claims that the ALJ made a "substantial procedural error" in failing to evaluate Listing 12.04C(2) in Finding No. 3. (DN 13, at pp. 1-2). It appears Bryant believes her recurring diagnosis of major depressive disorder along with physician's findings that she has poor coping skills during crisis and tends to decompensate under stress proves she meets section (2) of Listing 12.04C, and this renders her disabled under the regulations. (Id. at p. 3). The United States counters that Bryant fails to point to any evidence showing she meets Listing 12.04C(2) and contends the ALJ's analysis of the listing was sufficient. (DN 18, at pp. 4-5).

At step three of the evaluation process, an Administrative Law Judge analyzes whether a claimant meets a listed impairment from 20 C.F.R. Pt. 404, Subpt P, App'x 1. A claimant must meet *all* of the specified medical criteria of a listing in order to show that her impairment matches the listing. Sullivan v. Zebley, 493 U.S. 521, 530, 110 S.Ct. 885, 107 L.Ed.2d 967 (1990) (emphasis added). "It is insufficient that a claimant comes close to meeting the requirements of a listed impairment." Elam ex rel. Golay v. Comm'r of Soc. Sec., 348 F.3d 124, 125 (6th Cir. 2003) (citing Dorton v. Heckler, 789 F.2d 363, 367 (6th Cir. 1986)).

Listing 12.04 addresses "affective disorders," defined as "a disturbance of mood accompanied by a full or partial manic or depressive syndrome." Listing 12.04 requires a claimant meet the requirements in paragraph A and paragraph B together or the requirements of paragraph C alone. In this case, the ALJ discussed both the paragraph B and Paragraph C criteria for Listing 12.04 in Finding No. 3. (Tr. 22-23). Bryant specifically takes issue with the ALJ's evaluation of the Paragraph C criteria, which requires a claimant to demonstrate a:

4

> Medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:
>
> 1. Repeated episodes of decompensation, each of extended duration; or
>
> 2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or
>
> 3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such arrangement.

20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 12.04(C).

Bryant is correct that the ALJ did not directly address subsection (2) of Listing 12.04C in Finding No. 3. Rather, the ALJ stated only that he considered the Paragraph C criteria and that "the record does not establish repeated episodes of decompensation or an extended inability to function outside a highly supportive living arrangement or a complete inability to function outside the area of one's home." (Tr. 22).

Despite the ALJ's passing over subsection (2) of Listing 12.04C, the Court finds the ALJ's evaluation is adequate for two reasons. First, the ALJ made sufficient factual findings elsewhere in his decision to support his conclusion at Finding No. 3. *See* Forrest v. Comm'r of Soc. Sec., 591 F. App'x 359, 366 (6th Cir. 2014) (holding that the regulations governing the five-step inquiry require only that the ALJ consider all evidence in the claimant's case record) (citing 20 C.F.R. § 404.1520(a)(3)); *see also* Bledsoe v. Barnhart, 165 F. App'x 408, 411 (6th Cir. 2006) (indicating that a court may search the ALJ's entire decision to determine whether the appropriate medical listings were considered).

On the whole, the ALJ's opinion acknowledges that Bryant struggles in stressful situations but explains there is little objective support in the record for broad psychological limitations. For instance, the ALJ repeatedly recognized Bryant's inpatient hospital admissions for suicide attempts but noted these episodes of decompensation were "brief" (Tr. 25), not generally of extended duration (Tr. 22), and generated from situational stress related to relationship issues with her boyfriend and family (Tr. 25). These findings support the ALJ's conclusion that Bryant cannot meet any subsection of 12.04C.

The ALJ's RFC determination further evaluates Bryant's mental limitations in great detail, noting Bryant's lack of significant treatment and that her overall mental status exams of record are largely unremarkable.  (Tr. 25).  The ALJ discussed Bryant's claims of paranoia and hallucinations, which he found lacked objective support in treatment notes.  (Tr. 24).  The ALJ also referenced treatment notes from April and May of 2015 where Bryant denied thoughts of self-harm and denied feeling down, depressed, or hopeless.  (Tr. 25).  Finally, the ALJ identified that treatment notes reflected "occasions of depressed or sad mood/affect" while other notes indicate "normal mood and affect," including appearance within normal limits, normal speech and psychomotor activity, and normal though content and thought pattern. (Tr. 25).

Notably, the ALJ's assignment of weight to the physicians' opinions in the record also supports his conclusion that Bryant could not meet Listing 12.04C(2).  Although Daniel Miller, a consultative examiner, found that "the claimant prefers a solitary lifestyle and tends to decompensate under pressure," the ALJ accorded his opinion little weight because it relied heavily on Bryant's subjective complaints rather than the longitudinal medical evidence of record. (Tr. 27).  Comparatively, the ALJ afforded great weight to the state agency psychological consultants' assessment, which indicated Bryant could not meet Listing 12.04C because "she has no more than

moderate limits in social functioning." (Tr. 27). The ALJ found the state agency psychological assessment was largely supported by the objective evidence of record, demonstrating minimal treatment with occasional exacerbation due to situational stressors. (Id.).

Having reviewed the ALJ's decision as a whole, the Court concludes that the ALJ made sufficient factual findings elsewhere in his decision to support his conclusions at step three and to facilitate meaningful judicial review. See Wilson v. Colvin, No. 3:13-CV-710-TAV-HBG, 2015 WL 1396736, at *4 (E.D. Tenn. Mar. 26, 2015) (noting the Sixth Circuit has declined to require remand where Administrative Law Judge makes sufficient factual findings elsewhere in the decision to support minimal reasoning at step three).

Second, even assuming the ALJ's stated findings failed to support his conclusions at Finding No. 3, the Court finds that the error is harmless. Despite her arguments to the contrary, Bryant fails to show her impairments meet or medically equal subsection (2) of Listing 12.04C. Forrest, 591 F. App'x at 366 (citing Reynolds v. Comm'r of Soc. Sec., 424 F. App'x 411, 416 (6th Cir. 2011)).

Bryant detailed "medically documented symptoms" from the record and evidence of "minimal limitations in her ability to do basic work activities" that she believes meet Paragraph A and Paragraph C of Listing 12.04, respectively. (DN 13, at pp. 4-5). Regarding subsection (2), however, Bryant only mentions a hospital note indicating she had "very poor psychological stress or coping skills during crisis" and a conclusion from Dr. Miller, the consultative examiner, that "she tends to decompensate under stress." (Id. at pp. 5-6). As mentioned above, the ALJ found Dr. Miller's conclusions were largely based on Bryant's subjective complaints and were, therefore, not fully reliable. While there is evidence of severe mental impairment identified by the ALJ, it is unclear how any of the evidence amounts to "[a] residual disease process that has

resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate." 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 12.04(C)(2).

Although it would have been helpful for the ALJ to expressly address subsection (2) of Listing 12.04C in Finding No. 3, the ALJ fully considered Bryant's mental impairments elsewhere in the opinion and any error with regard to this finding is harmless. For these reasons, the Court finds Bryant's objection is without merit.

### C. Finding No. 4: Residual Functional Capacity

Bryant also mounts numerous challenges to the ALJ's Finding No. 4, the RFC determination. (DN 13, at p. 6). The residual functional capacity finding is the Administrative Law Judge's ultimate determination of what a claimant can still do despite her physical and mental limitations. 20 C.F.R. §§ 416.945(a), 416.946. The Administrative Law Judge bases his residual functional capacity finding on a review of the record as a whole, including a claimant's credible testimony and the opinions from a claimant's medical sources. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

#### 1. Daniel Miller's Opinion

Bryant takes issue with the ALJ's decision to afford Daniel Miller's opinion little weight. The ALJ's rejection of Dr. Miller's opinion, Bryant argues, does not allow for meaningful judicial review. (DN 10, at pp. 9-10).

The regulations require Administrative Law Judges to evaluate every medical opinion in the record. 20 C.F.R. 404.1527(c). The source of a medical opinion dictates the process by which the Administrative Law Judge gives it weight. Gayheart v. Comm'r of Soc. Sec., 710 F.3d 365, 376 (6th Cir. 2013). In weighing a consultative examiner's opinion, an Administrative Law

Judge must evaluate the factors listed in 20 C.F.R. § 404.1527(c). These factors include the length, nature, and extent of the treatment relationship, the supportability and consistency of the opinion compared to other evidence in the record, and the source's area of specialty. 20 C.F.R. § 404.1527.

Here, the ALJ discussed Dr. Miller's one-time consultative examination findings and gave the opinion little weight because it was not supported by the objective evidence in the record showing limited treatment and largely unremarkable exam findings and because the opinion relied heavily on Bryant's subjective complaints. (Tr. 27). In the short "medical source statement" at the end of Dr. Miller's opinion, he noted that Bryant's "concentration is erratic [and] is broken by her pain and depression" and "she tends to decompensate under stress." (Tr. 444). Dr. Miller also questioned Bryant's ability to maintain a working relationship with fellow workers and supervisors. (Id.).

An inspection of the record corroborates the ALJ's determination. For instance, the objective exam records from Seven Counties Services are largely unremarkable, indicating only that Bryant has sad and depressed mood, depressed affect, difficulty concentrating, and is easily distracted. (Tr. 354, 356, 472). Other exam notes from University of Louisville Rheumatology identified Bryant was "normal, alert and interactive" and "had appropriate mood and affect." (Tr. 804, 807, 812, 816). These objective treatment notes are inconsistent with Dr. Miller's more severe statements and limitations. Based on this evidence, the Court finds the ALJ's rendering of "little weight" to Dr. Miller's opinion is supported by substantial evidence and should not be disturbed.

### 2. State Agency Psychologists' Assessments

Bryant next challenges the ALJ's assignment of "great weight" to the state agency psychological consultants' assessment. (DN 13, at p. 11). The regulations provide that "[s]tate

9

agency medical and psychological consultants . . . are highly qualified physicians and psychologists who are also experts in Social Security disability evaluation." 20 C.F.R. §§ 404.1527(e)(2)(i), 416.927(e)(2)(i). Generally, a non-examining physician's report is entitled to less weight than the reports of other physicians who examined the claimant. Allen v. Califano, 613 F.2d 139, 145 (6th Cir. 1980). When a non-examining source has not reviewed a significant portion of the record, and the Administrative Law Judge fails to indicate that he has "at least considered [that] fact before giving greater weight" to the reviewing doctor's opinion, the decision cannot stand. Blakely v. Comm'r of Soc. Sec., 581 F.3d 399, 409 (6th Cir. 2009). But when the opinions of non-examining State agency medical/psychological advisors are consistent with the record, those opinions represent substantial evidence to support the Administrative Law Judge's decision. 20 C.F.R. §§ 404.1527(e)(2)(i), 416.927(f); Social Security Ruling 96-6p, 1996 WL 374180, at *2, 3; Atterbery v. Sec'y of Health & Human Servs., 871 F.2d 567, 570 (6th Cir. 1989).

Here, the ALJ discussed various findings from the state agency assessment, including Bryant's ability to understand and complete 1-3 step tasks that require minimal reading, ability to sustain concentration and complete routine tasks with little change, and ability to adapt to task oriented settings that require little reading. (Tr. 27). The ALJ also mentioned the assessment's indication that Bryant "has no more than moderate limits in social functioning" but would work best without others. (Id.). The ALJ afforded this assessment "great weight" because "it was largely supported by the objective evidence of record showing minimal treatment with occasional exacerbation due to situational stressors" and "[it] is also supported by the overall clinical findings of record that have been outlined herein." (Tr. 27).

After reviewing these state agency assessments, the Court agrees. Although the record demonstrates that physicians have consistently diagnosed Bryant with depressive disorder, the

objective treatment notes do not substantiate the severity of Bryant's subjective complaints. Because the state agency assessments are largely consistent with the record, the ALJ's decision to afford them great weight is supported by substantial evidence and comports with the regulations.

### 3. The ALJ's RFC Determination

Bryant lastly claims substantial evidence does not support the ALJ's conclusion that she can complete simple, routine 1-3 step tasks and that she can work with coworkers and supervisors. (DN 13, at p. 6). Bryant believes the ALJ's "narrative discussion" is unsupported and perfunctorily disposes of treating notes dealing with her concentration and attention deficits. (Id. at pp. 6-9).

The "narrative discussion" that Bryant references comes from Social Security Ruling 96-8p, which indicates that an RFC assessment must describe how the evidence supports each conclusion, cite specific medical facts and nonmedical evidence, discuss an individual's ability to perform sustained work activities in an ordinary and continuing basis, and explain how any material inconsistencies or ambiguities in the record were considered and resolved. SSR 96-8p, at *7.

Here, the ALJ's narrative discussion in the RFC assessment spans almost six pages, addresses evidence of both Bryant's physical and mental impairments from the record, considers the medical opinions of record, and assesses Bryant's credibility. (Tr. 23-28). The ALJ thoroughly explained how he reached each finding. For instance, in stating that "[g]iven the claimant's allegations regarding the severity of her mental symptoms, one would expect that the claimant would have had more significant treatment," the ALJ cited to record documents generally consisting of routine office visits for medication management of her symptoms. (Tr. 25 (citing Ex. 5F, 10F, 13F, 14F, 22F, 23F, Ex. 20F p. 10, Ex. 25F p. 10, Ex. 28F page 4, 7, 12, 16)). The ALJ

also recognized Bryant's two brief hospitalizations, which appeared to stem from situational stress related to relationship problems, but noted that more recently Bryant has denied feeling down, depressed, or hopeless. (Tr. 25).

The ALJ went on to discuss Bryant's low intellectual functioning, including her participation in a learning disabilities program and her below average IQ, but concluded she is not as limited as alleged. Specifically, the ALJ noted Jefferson County Public School records indicating that Bryant was believed to have higher abilities than were then measured but she suffered from poor attendance and motivation. (Id.). In discussing Bryant's Global Assessment of Functioning ("GAF") scores, the ALJ noted they ranged from 20-65 and that they are of little evidentiary value because these subjectively assessed scores reveal only snapshots of impaired or improved behavior. (Tr. 26). As outlined above, the ALJ also adequately evaluated the medical opinions in the record, giving specific reasons for assigning little weight to Dr. Miller's consultative examination and great weight to the state agency psychological assessments.

Accordingly, the ALJ's thorough "narrative discussion" accurately portrays what Bryant can still do despite some psychological limitations and is supported by substantial evidence.

## ORDER

**IT IS HEREBY ORDERED** that the final decision of the Commissioner is **AFFIRMED.**

This is a final and appealable Order and there is no just cause for delay.

Copies:     Counsel